UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DOMINGO SANTIAGO NUNEZ PENA,

                    Petitioner,

            -v-                                    14-CV-282-JTC

TODD L. TRYON,
Buffalo Federal Detention Facility,

                    Respondent.

_____

## INTRODUCTION

Petitioner Domingo Santiago Nunez Pena, an alien in the custody of the United

States Department of Homeland Security, Immigration and Customs Enforcement

(collectively, "DHS"), has filed this petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2241 seeking release from detention at the Buffalo Federal Detention Facility in

Batavia, New York ("BFDF"), pending completion of immigration removal proceedings.

Item 1.  As directed by this court's order entered April 28, 2014 (Item 5), respondent has

submitted an answer and return (Item 7), along with an accompanying memorandum of law

(Item 8), in opposition to the petition.  For the reasons that follow, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native and citizen of the Dominican Republic, was admitted to the

United States at New York City on or about August 10, 1966, as a lawful permanent

resident.  *See* Item 6-2 (Exh. A attached to Declaration of DHS Deportation Officer Juanita

Payan (Item 7-1)), p. 8.  During the time he has been living in the United States, petitioner has been convicted of the following criminal offenses:

a.   On or about January 17, 1991, petitioner was convicted in New York State Supreme Court, Queens County, of Criminal Sale of a Controlled Substance in the 3rd Degree (heroin), in violation of N.Y. Penal Law § 220.39 (3 counts).  For these offenses, he was sentenced to a 2 to 6 year term of imprisonment.

b.   On or about May 8, 1997, petitioner was convicted in New York State Supreme Court, Queens County, of Criminal Possession of a Controlled Substance in the 7th Degree (cocaine), in violation of N.Y. Penal Law § 220.03.  For this offense, he was granted a conditional discharge.

c.   On or about August 22, 1999, petitioner was convicted in New York State Supreme Court, Queens County, of Criminal Possession of a Controlled Substance in the 7th Degree (cocaine), in violation of N.Y. Penal Law § 220.03.  For this offense, he was sentenced to 7 days of imprisonment.

d.   On or about June 29, 2011, petitioner was convicted in New York State Supreme Court, Bronx County, of Criminal Possession of a Controlled Substance in the 7th Degree (heroin), in violation of N.Y. Penal Law § 220.03 (2 counts).  For these offenses, he was granted a conditional discharge.

Item 7-2, pp. 8, 11-12.

On April 17, 2013, petitioner was arrested by officers of the Albany, New York, Police Department and charged with Criminal Possession of a Controlled Substance in the 7th Degree, in violation of N.Y. Penal Law § 220.03, and Criminal Trespass in the 3rd

Degree, in violation of N.Y. Penal Law § 140.10.  *Id.* at 12.  Pending disposition of these charges, petitioner was placed in a "Recovery Rehabilitation Therapeutic Program" in Bath, NY, from July 2013, until February 12, 2014.  *Id.* at 14.  Then, on February 20, 2014, while appearing in Albany, New York, City Court, petitioner was taken into custody by DHS officers and served with a Notice to Appear ("NTA") charging him with being removable from the United States pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(a)(iii), as an alien who has been convicted of an aggravated felony (defined in INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B), as an offense relating to the "illicit trafficking in a controlled substance"), and pursuant to INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), as an alien who has been convicted of a controlled substance offense.  *Id.* at 4-9.

On April 9, 2014, Immigration Judge ("IJ") Steven J. Connelly denied petitioner's request for a change in custody status, and determined that petitioner was subject to detention in DHS custody pursuant to the provisions of INA § 236(c), pending a final determination of removability.  *Id.* at 2-4.  Petitioner is currently detained at the BFDF pending completion of immigration removal proceedings.  *See id.* at 1. (Warrant of Arrest).

On April 17, 2014, petitioner filed this action for habeas corpus relief on the ground that his continued detention in DHS custody without an individualized bond hearing violates his right to due process under the Fifth Amendment to the United States Constitution.  *See* Item 1.

## **DISCUSSION**

Petitioner challenges his detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings and pending removal following the entry of a final order of removal are governed by two separate provisions of the INA–respectively, section 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and section 241, which authorizes detention of aliens after the issuance of a final order of removal.  In this case, petitioner's detention at the time he filed his habeas petition was pursuant to section 236, which provides in pertinent part:

(a) Arrest, detention, and release.

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States . . . .  Except as provided in subsection (c). . . and pending such decision, the Attorney General–

(1) may continue to detain the arrested alien; and
(2) may release the alien on-
      (A) bond of at least $1,500 with security approved by, and
      containing conditions prescribed by the Attorney General; or
      (B) conditional parole …
…

(c) Detention of criminal aliens

(1) Custody

The Attorney General shall take into custody any alien who … is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title, …

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

(2) Release

The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides [that a limited "witness protection" exception applies], and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. …

8 U.S.C. § 1226(a)(1), (2); (c)(1)(B), (2).

In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court held that, while "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings …," *id.* at 523 (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)), section 236(c)'s authorization of mandatory detention without bail during the pendency of removal proceedings is constitutionally permissible "for a limited class of deportable aliens–including those [like petitioner here] convicted of an aggravated felony." *Id.* at 517-518, 531.   As explained in *Demore*, this is due in part to the provision in the immigration regulations for an immediate "*Joseph*" hearing at which the detainee is "entitled to raise any nonfrivolous argument available to demonstrate that he was not properly included in a mandatory detention category."   *Demore*, 538 U.S. at 514 & n. 3

(citing *Matter of Joseph*, 22 I. & N. Dec. 799, 1999 WL 339053 (BIA 1999)); *see* 8 C.F.R. §§ 1003.19 & 1236.1.

In this case, the record reveals that petitioner timely availed himself of the process afforded under *Joseph* to challenge his classification as an alien subject to mandatory detention under section 236(c), but the IJ denied petitioner's request for a change in custody status. *See* Item 7-2, p. 2 (April 9, 2014 IJ Order). Accordingly, as of the date of entry of this decision, petitioner remains in mandatory detention pursuant to section 236(c) which, as explained in *Demore*, is "constitutionally permissible" under the Due Process Clause. *Demore*, 538 U.S. at 531.

In support of his habeas challenge in this court, petitioner contends that because DHS did not detain him immediately upon his release from state custody, his detention is not authorized under the mandatory provisions of section 236(c), and he should therefore be granted an individualized bond hearing under the provisions of section 236(a). The government responds that the determination of this issue is governed by the administrative ruling in *Matter of Rojas*, 23 I. & N. Dec. 117, 2001 WL 537957 (BIA 2001), in which the Board of Immigration Appeals ("BIA") concluded that the mandatory detention without bail authorized pursuant to section 236(c) (and found to satisfy due process under *Demore*) does not require that the detention commence immediately upon the alien's release from custody following service of his or her sentence on the underlying criminal conviction. The government contends that, in the absence of controlling Supreme Court or Second Circuit precedent, this court should give deference to the BIA's *Rojas* ruling under the standards of *Chevron, U.S.A., Inc. v. Nat'l Res. Defense Council, Inc.,* 467 U.S. 837 (1984) .

-6-

In *Rojas*, the BIA interpreted section 236(c)'s mandatory detention requirement to include criminal aliens subject to removal proceedings who were not taken into custody by the Immigration and Naturalization Service ("INS") immediately upon release from state custody but, like petitioner here, were "free in the community before being detained …." *Rojas*, 23 I. & N. Dec. at 118.  The BIA first determined that the language of section 236(c) was ambiguous since the phrase "an alien described in paragraph (1)" contained in section 236(c)(2) was "susceptible to different readings," and then undertook a detailed examination of the provision under recognized principles of statutory construction.  *Id.* at 120.  Following a lengthy discussion regarding the ordinary meaning of the statute's language, its overall context and goals, its predecessor provisions, and practical considerations, the BIA ultimately concluded that INS officials retained authority under the statute to impose mandatory detention even if they failed to act immediately upon the alien's release from state custody, and further, that the statute and regulations do not give Immigration Judges the jurisdiction to conduct bond hearings for criminal aliens properly subject to mandatory detention under section 236(c).  *Id.* at 121–27.

Upon review of the determination in *Rojas*, this court cannot find that the BIA's conclusions regarding the proper construction of section 236(c) are "arbitrary, capricious or manifestly contrary to the statute."  *Chevron*, 467 U.S. at 844.  The Supreme Court's *Chevron* opinion outlines a two-step analysis under which the court reviewing an administrative agency's interpretation of the meaning of a statutory provision first inquires "whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must

give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842–43.  But "if the statute is silent or ambiguous with respect to the specific issue," the inquiry becomes "whether the agency's answer is based on a permissible construction of the statute."  *Id.* at 843; *see also Kar Onn Lee v. Holder*, 701 F.3d 931, 936 (2d Cir. 2012) ("We will not defer to an interpretation that is arbitrary, capricious, or manifestly contrary to the statute.  But if the agency interpretation is reasonable, then we must defer to it.") (quotation marks, alterations, and citations omitted).

With regard to the first step, it is widely recognized that Congress has not addressed with clarity the question at issue here, and in *Rojas*: whether mandatory detention pursuant to INA section 236(c) is authorized only for those aliens who are taken into DHS custody at the precise moment they are released from criminal custody.  As this court recently observed, "[s]hort of engaging in an etymological analysis of the clause 'when the alien is released,' suffice to say that its ambiguity is confirmed by the divergent results reached by many of the district courts that have done so." *Clarke v. Phillips,* ___F. Supp. 2d___, 2014 WL 1716311, at *4 (W.D.N.Y. May 1, 2014) (citing *Johnson v. Orsino*, 942 F. Supp. 2d 396, 404-05 (S.D.N.Y. 2013) (comparing cases)).

With regard to the inquiry at step two, in the part of its analysis most relevant to the matters raised in the instant petition, the BIA resolved the ambiguity of section 236(c) by considering the natural meaning of the statutory language; the overall structure of the statute; the legislative history of the mandatory detention provision; and practical concerns, finding that:

> It would … be inconsistent with our understanding of the statutory design to construe section 236(c) of the Act in a way that permits the release of some criminal aliens, yet mandates the detention of others convicted of the same

crimes, based on whether there is a delay between their release from criminal custody and their apprehension by the [INS].

*Rojas*, 23 I. & N. Dec. at 125.

In this court's view, this conclusion is based on a reasonable construction of the statutory language, and is entitled to deference under the *Chevron* inquiry.  As the Supreme Court noted in the *Chevron* case, the reviewing court "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding."  *Chevron*, 467 U.S. at 843 n. 11.  Rather, as long as the agency's construction " 'represents a reasonable accommodation of conflicting policies that were committed to the agency's care by statute, [the court] should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.' "  *Id.* at 845 (quoting *United States v. Shimer*, 367 U.S. 374, 382-83 (1961)).

Given the BIA's thorough explanation of its understanding that Congress adopted the mandatory detention scheme in an attempt to address the problem of expeditious removal of all criminal aliens (not just those coming directly out of criminal incarceration), the BIA's conclusion that section 236(c) does not require immediate detention represents a reasonable interpretation of the meaning of the clause "when the alien is released," and is entitled to *Chevron* deference.  Indeed, as observed in the concurring opinion of two BIA Board Members in *Rojas* (concurring in the result while disagreeing with the majority's analysis), "[i]t is difficult to conclude that Congress meant to premise the success of its mandatory detention scheme on the capacity of the [INS] to appear at the jailhouse door

-9-

to take custody of an alien at the precise moment of release." *Rojas*, 23 I. & N. Dec. at 128.

This view is bolstered by the fact that the only federal appellate rulings on the issue to date have agreed with the result reached by the BIA in *Rojas*, if not the precise analytical approach.  *See Sylvain v. Attorney General of U.S.*, 714 F.3d 150, 161 (3d Cir. 2013) (criminal alien found to be subject to mandatory detention under § 236(c) even though not detained by DHS until four years after conditional discharge; "Our holding rests on a simple observation: even if the statute calls for detention 'when the alien is released,' and even if 'when' implies some period of less than four years, nothing in the statute suggests that officials lose authority if they delay."); *Hosh v. Lucero*, 680 F.3d 375, 381 (4th Cir. 2012) (according *Chevron* deference to BIA's conclusion in *Rojas*; "[W]hile we agree that Congress's command to the Attorney General to detain criminal aliens 'when ... released' from other custody connotes some degree of immediacy, we cannot conclude that Congress clearly intended to exempt a criminal alien from mandatory detention and make him eligible for release on bond if the alien is not *immediately* taken into federal custody.") (emphasis supplied); *see also Gomez v. Napolitano*, No. 11–2682, 2012 U.S.App. LEXIS 27076, at *1–2 (2d Cir. June 5, 2012) (recognizing that "the proper interpretation of Section 236(c) is a weighty question, unresolved in this Circuit" but dismissing appeal as moot because petitioner was no longer detained under mandatory detention provision).[1]

---

[1]The court recognizes the contrary result reached by Hon. Richard J. Arcara in *Scarlett v. U.S. Dept. of Homeland Sec. Bureau of Immigration and Customs Enforcement*, 632 F. Supp. 2d 214 (W.D.N.Y. July 10, 2009) (adopting report and recommendation of U.S.M.J. H. Kenneth Schroeder). However, "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, ___U.S.___, ___ n. 7, 131 S.Ct. 2020, 2033 n. 7 (2011).  In any event, in making his recommendation in *Scarlett*, the magistrate judge did not engage in an independent *Chevron* analysis of the BIA's conclusion

For these reasons, the court defers to the BIA's reasonable conclusion that immigration officials do not lose their authority to detain a criminal alien under section 236(c) if they fail to act at the time the alien is released from criminal custody. Accordingly, petitioner's mandatory detention without an individualized bond hearing is authorized under section 236(c), and is constitutionally permissible under the Due Process Clause.

## **CONCLUSION**

On the basis of the foregoing, the court finds that petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2241. The petition is therefore denied, and the case is dismissed.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   August 18, 2014

---

in *Rojas*, but rather, placed substantial reliance on the district court's "persuasive" analysis in *Waffi v. Loiselle*, 527 F. Supp. 2d 480, 488 (E.D.Va. 2007), which was subsequently abrogated by the Fourth Circuit's decision in *Hosh v. Lucero*. *See Hosh,* 680 F.3d at 381.